FILED by YH D.C.

Apr 22, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**21-20242-CR-ALTONAGA/TORRES**

CASE NO. _____

**18 U.S.C. § 371**
**21 U.S.C. § 331(a)**
**21 U.S.C. § 331(d)**
**21 U.S.C. § 333(a)(2)**
**18 U.S.C. § 401(3)**

UNITED STATES OF AMERICA

vs.

MARK SCOTT GRENON,
JONATHAN DAVID GRENON,
JORDAN PAUL GRENON, and
JOSEPH TIMOTHY GRENON,

        Defendants.
_____/

### INDICTMENT

The Grand Jury charges that:

#### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### Regulatory Framework

1.     The United States Food and Drug Administration ("FDA") was the federal agency charged with the responsibility of protecting the health and safety of the American public by assuring, among other things, that drugs marketed and distributed to the American public were safe and effective. The FDA's responsibilities included enforcing the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq. ("FDCA"), and regulating the

manufacture, labels, labeling, and distribution of all drugs shipped or received in interstate commerce.

2. Under the FDCA, a "drug" was defined to include, among other things: articles that were intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans, 21 U.S.C. § 321(g)(1)(B); articles (other than food) intended to affect the structure or any function of the body of humans, 21 U.S.C. § 321(g)(1)(C); or articles intended for use as components of other drugs, 21 U.S.C. § 321(g)(1)(D).

3. The "intended use" of a drug meant the objective intent of the persons legally responsible for the labeling of that product. The intent was determined by such persons' expressions, the circumstances surrounding the distribution of the article, labeling claims, advertising matter, or oral or written statements by such persons or their representatives. 21 C.F.R. § 201.128.

4. Under the FDCA, "labeling" was defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article," 21 U.S.C. § 321(m); and "label" was defined as "a display of written, printed, or graphic matter upon the immediate container of any article," 21 U.S.C. § 321(k).

5. Under the FDCA, a "new drug" was defined as any drug "the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof." 21 U.S.C. § 321(p)(1).

6. Under the FDCA, a drug that was a "new drug" could not be lawfully introduced or delivered for introduction into interstate commerce, unless the FDA had approved a new drug application or an abbreviated new drug application with respect to such drug, or such drug was exempt from approval pursuant to an effective investigational new drug application. 21 U.S.C. §§ 331(d) & 355(a), (b), (i), & (j).

7. "Adequate directions for use" meant directions under which a layperson could use a drug safely for the purposes for which it was intended. 21 C.F.R. § 201.5.

8. Under the FDCA, a "prescription drug" was any drug intended for use in humans that, because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary for its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug, or was limited by an approved application under section 21 U.S.C. § 355 for use under the professional supervision of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b)(1).

9. Because a prescription drug, by definition, was safe for use only under the supervision of a licensed practitioner, there were no directions that could enable a layperson to use a prescription drug safely. Therefore, adequate directions for use could not be written for a prescription drug.

10. Under the FDCA, upon first engaging in the manufacture, preparation, propagation, compounding, or processing of a drug, every person was required to immediately register with the FDA such person's name, places of business, all such establishments owned or operated by such person, the unique facility identifier of each such establishment, and a point of contact email address. 21 U.S.C. §§ 360(b)(1) & (c).

11. Under the FDCA, the terms "manufacture, preparation, propagation, compounding, or processing" included repackaging or otherwise changing the container, wrapper, or labeling of any drug package in furtherance of the distribution of the drug from the original place of manufacture to the person who makes final delivery or sale to the ultimate consumer. 21 U.S.C. § 360(a)(1).

12. The FDCA prohibited the introduction or delivery for introduction into interstate commerce, or the causing thereof, of any "new drug" that was neither approved by the FDA nor exempt from approval. 21 U.S.C. §§ 331(d) & 355(a).

13. The FDCA also prohibited the introduction or delivery for introduction into interstate commerce, or the causing thereof, of any drug that was misbranded. 21 U.S.C. § 331(a).

14. A drug was misbranded if, among other things:

   a. its labeling failed to bear "adequate directions for use," 21 U.S.C. § 352(f)(1); or

   b. it was manufactured, prepared, propagated, compounded, or processed in an establishment in any State not duly registered with the FDA, 21 U.S.C. § 352(o).

## The Drug

15. Miracle Mineral Solution ("MMS") was a liquid solution containing sodium chlorite and water.

16. When MMS was mixed with an acidic activator, as directed by the defendants, the resulting chemical reaction produced chlorine dioxide.

17. Chlorine dioxide was a powerful bleaching agent typically used for bleaching and stripping textiles, pulp, and paper. Chlorine dioxide was also used in industrial water treatment, because it was a disinfectant, capable of killing pathogenic microorganisms such as fungi, bacteria, and viruses.

18. MMS was a "drug" within the meaning of 21 U.S.C. § 321(g)(1).

19. MMS was a "new drug" within the meaning of 21 U.S.C. § 321(p)(1).

20. MMS was a "prescription drug" within the meaning of 21 U.S.C. § 353(b)(1).

21. MMS was not approved by the FDA for any use, nor was it exempt from FDA approval.

## The Defendants and Co-Conspirator 1

22. **MARK SCOTT GRENON** manufactured, promoted, sold, and distributed MMS to the American public. **GRENON** was also the leader of Genesis II Church of Health and Healing ("Genesis"), an explicitly non-religious entity that **GRENON** co-founded in or around April 2010.

23. **JONATHAN DAVID GRENON** was a member of Genesis, and he assisted **MARK SCOTT GRENON**, who was his father, in the manufacture, promotion, sale, and distribution of MMS.

24. **JORDAN PAUL GRENON** was a member of Genesis, and he assisted **MARK SCOTT GRENON**, who was his father, in the manufacture, promotion, sale, and distribution of MMS.

25. **JOSEPH TIMOTHY GRENON** was a member of Genesis, and he assisted **MARK SCOTT GRENON**, who was his father, in the manufacture, promotion, sale, and distribution of MMS.

26. Co-Conspirator 1 co-founded Genesis with **MARK SCOTT GRENON** and promoted MMS to the American public for the cure, mitigation, treatment, and prevention of a variety of diseases.

### Prior Civil Enforcement Action

27. On or about April 16, 2020, the United States filed a civil complaint in the United States District Court for the Southern District of Florida, against **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON, JOSEPH TIMOTHY GRENON**, and Genesis, seeking a preliminary injunction and a permanent injunction to enjoin the defendants from violating the FDCA. *See United States v. Genesis II Church of Health and Healing, et al.*, Case No. 20-21601-CV-WILLIAMS, ECF Nos. 1, 3.

28. On or about April 17, 2020, United States District Judge Kathleen M. Williams issued a Temporary Restraining Order against **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON, JOSEPH TIMOTHY GRENON**, and Genesis. That Temporary Restraining Order, *inter alia*, prohibited the defendants from "directly or indirectly, label[ing], hold[ing], and/or distribut[ing] any [unapproved or misbranded] drug, including but not limited to MMS . . . ." *See United States v. Genesis II Church of Health and Healing, et al.*, Case No. 20-21601-CV-WILLIAMS, ECF No. 4 at 3.

29. On or about May 1, 2020, United States District Judge Kathleen M. Williams issued an Order of Preliminary Injunction against **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON, JOSEPH TIMOTHY GRENON**, and Genesis. As with the Temporary Restraining Order that preceded it, that Order of Preliminary Injunction, *inter alia*, prohibited the defendants from "directly or indirectly, label[ing], hold[ing], and/or distribut[ing] any [unapproved or misbranded] drug, including but not

limited to MMS . . . ." *See United States v. Genesis II Church of Health and Healing, et al.*, Case No. 20-21601-CV-WILLIAMS, ECF No. 26 at 8.

## COUNT 1
### Conspiracy to Defraud and to Commit Offenses Against the United States
### (18 U.S.C. § 371)

1. Paragraphs 1 through 29 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

2. From in or around April 2010, and continuing through on or about July 20, 2020, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**MARK SCOTT GRENON,
JONATHAN DAVID GRENON,
JORDAN PAUL GRENON, and
JOSEPH TIMOTHY GRENON,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to:

(a) defraud the United States and its agencies by impeding, impairing, obstructing, and defeating the lawful governmental functions of the FDA to protect the health and safety of the American public by ensuring that drugs marketed and distributed to the American public were safe and effective for their intended uses;

(b) commit an offense against the United States, that is, with the intent to defraud and mislead, introducing and delivering for introduction into interstate commerce, and causing to be introduced and delivered for introduction into interstate commerce, a new drug, to wit, MMS, that did not have in effect an approval of an application filed pursuant to Title 21, United States Code, Sections 355(b) and (j), and was not exempted from such approval

7

pursuant to Title 21, United States Code, Section 355(i), in violation of Title 21, United States Code, Sections 331(d), 355(a), and 333(a)(2); and

(c) commit an offense against the United States, that is, with the intent to defraud and mislead, introducing and delivering for introduction into interstate commerce, and causing to be introduced and delivered for introduction into interstate commerce, a drug, to wit, MMS, that was misbranded as defined by Title 21, United States Code, Sections 352(f)(1) and (o), in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

### PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to evade government regulation of MMS, and to unlawfully manufacture, promote, sell, and distribute MMS to consumers.

### MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. **MARK SCOTT GRENON** and his sons, **JONATHAN DAVID GRENON, JORDAN PAUL GRENON,** and **JOSEPH TIMOTHY GRENON,** manufactured, promoted, sold, and distributed MMS.

5. **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON,** and **JOSEPH TIMOTHY GRENON** claimed that MMS could be used to treat, prevent, and cure a variety of serious diseases and disorders, including cancer, Alzheimer's, diabetes, autism, malaria, hepatitis, Parkinson's, herpes, HIV/AIDS, and, more recently, novel coronavirus disease 2019, also known as COVID-19 (hereinafter, "Coronavirus").

8

6.     **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON,** and **JOSEPH TIMOTHY GRENON** knew that MMS had not been approved by the FDA for any use, and that their actions in manufacturing, promoting, selling, and distributing MMS to consumers as a miracle cure-all were unlawful.

7.     **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON,** and **JOSEPH TIMOTHY GRENON** manufactured, promoted, sold, and distributed MMS under the guise of Genesis II Church of Health and Healing, an explicitly non-religious entity that **MARK SCOTT GRENON** and Co-Conspirator 1 founded in an attempt to evade government regulation of MMS and shield themselves from prosecution.

8.     **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON,** and **JOSEPH TIMOTHY GRENON** rejected the authority of the government to regulate MMS, defying government regulations and threatening individuals enforcing those regulations.

9.     **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON, JOSEPH TIMOTHY GRENON,** and Co-Conspirator 1 created and maintained various Genesis-affiliated websites to promote and distribute MMS. These websites included www.genesis2church.ch, www.genesis2church.is, www.g2voice.is, www.g2sacraments.org, www.newg2sacraments.org, www.mmswiki.is, www.jimhumble.co, and mmstestimonials.co, among others.

10.    At www.g2sacraments.org and www.newg2sacraments.org, websites which were created and maintained by **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON,** and **JOSEPH TIMOTHY GRENON,** consumers could place online orders for MMS. Although these websites stated that MMS could be

9

acquired only through a "donation" to Genesis, the donation amounts for orders of MMS were set at specific dollar amounts, and were mandatory, such that the "donation" amounts were effectively just sales prices.

11. **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON,** and **JOSEPH TIMOTHY GRENON** manufactured MMS in the backyard of **JONATHAN DAVID GRENON's** home in Bradenton, Florida, an establishment that had not been duly registered with the FDA for the manufacture, preparation, propagation, compounding, or processing of a drug.

12. **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON,** and **JOSEPH TIMOTHY GRENON** distributed over 28,000 bottles of MMS to the American public, shipping MMS from Bradenton, Florida, to consumers all across the country, including consumers in other states and consumers in the Southern District of Florida.

13. As a result of their sales of MMS, **MARK SCOTT GRENON, JONATHAN DAVID GRENON, JORDAN PAUL GRENON,** and **JOSEPH TIMOTHY GRENON** received more than one million dollars ($1,000,000).

## OVERT ACTS

In furtherance of the conspiracy, and to achieve the purpose and objects thereof, at least one co-conspirator committed and caused to be committed, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1. In or around April 2010, **MARK SCOTT GRENON** and Co-Conspirator 1 announced that they were forming a non-religious "church," called Genesis II Church of

Health and Healing, in order to cloak their unlawful distribution of MMS as protected religious exercise, and thereby attempt to evade government regulation of MMS and shield themselves from future prosecution.

2. On or about November 13, 2014, **MARK SCOTT GRENON** registered the domain name, www.genesis2church.is.

3. On or about March 23, 2015, **JORDAN PAUL GRENON** registered the domain name, www.g2sacraments.org.

4. On or about December 16, 2015, **MARK SCOTT GRENON** registered the domain name, www.quantumleap.is.

5. In or around December 2015, **MARK SCOTT GRENON** disseminated a documentary titled, "Quantum Leap: The Global Healing Revolution," in which **MARK SCOTT GRENON** claimed that, using MMS, he had healed hundreds of thousands of people from cancer, HIV/AIDS, malaria, diabetes, Parkinson's, arthritis, and other serious diseases and disorders.

6. On or about August 12, 2016, **MARK SCOTT GRENON** registered the domain name, www.g2voice.is.

7. On or about July 25, 2017, **JORDAN PAUL GRENON** and **JONATHAN DAVID GRENON** caused one bottle of MMS to be mailed from Bradenton, Florida, to Davie, Florida.

8. On or about October 3, 2019, **JORDAN PAUL GRENON** and **JONATHAN DAVID GRENON** caused one bottle of MMS to be mailed from Bradenton, Florida, to Plantation, Florida.

9. On or about November 20, 2019, **JORDAN PAUL GRENON** and **JONATHAN DAVID GRENON** caused one bottle of MMS to be mailed from Bradenton, Florida, to Miami, Florida.

10. On or about March 3, 2020, **MARK SCOTT GRENON** sent an email to the subscribers of his newsletter in which **MARK SCOTT GRENON** claimed that MMS could cure Coronavirus. In this newsletter, **MARK SCOTT GRENON** provided detailed dosing instructions for using MMS to treat Coronavirus, with one set of dosing instructions for adults, and another set of dosing instructions for young children.

11. On or about March 8, 2020, **MARK SCOTT GRENON** and **JOSEPH TIMOTHY GRENON** disseminated a podcast titled, "The Coronavirus is curable! Do you believe it? You better!," in which **MARK SCOTT GRENON** and **JOSEPH TIMOTHY GRENON** promoted MMS as a cure for Coronavirus.

12. On or about March 15, 2020, **MARK SCOTT GRENON** and **JOSEPH TIMOTHY GRENON** recorded a podcast titled, "The Controversial Healing Cure," in which **MARK SCOTT GRENON** and **JOSEPH TIMOTHY GRENON** promoted MMS as a cure for Coronavirus.

13. On or about March 18, 2020, **JORDAN PAUL GRENON** and **JONATHAN DAVID GRENON** caused one bottle of MMS to be mailed from Bradenton, Florida, to Atlanta, Georgia.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Criminal Contempt – Temporary Restraining Order
### (18 U.S.C. § 401(3))

1. Paragraphs 1 through 25 and 27 through 29 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

2. From on or about April 17, 2020, and continuing through on or about May 1, 2020, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MARK SCOTT GRENON,
JONATHAN DAVID GRENON,
JORDAN PAUL GRENON, and
JOSEPH TIMOTHY GRENON,**

did knowingly and willfully, and in disobedience and resistance to a lawful order and command of the United States District Court for the Southern District of Florida, that is, a Temporary Restraining Order issued in Miami, Florida, on or about April 17, 2020, in the case of *United States v. Genesis II Church of Health and Healing, et al.*, Case No. 20-21601-CV-WILLIAMS, violate that Temporary Restraining Order, in that the defendants did directly and indirectly label, hold, and distribute an unapproved and misbranded drug, namely, MMS.

In violation of Title 18, United States Code, Sections 401(3) and 2.

## COUNT 3
### Criminal Contempt – Preliminary Injunction
### (18 U.S.C. § 401(3))

1. Paragraphs 1 through 25 and 27 through 29 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

2. From on or about May 1, 2020, and continuing through on or about July 20, 2020, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MARK SCOTT GRENON,**
**JONATHAN DAVID GRENON,**
**JORDAN PAUL GRENON, and**
**JOSEPH TIMOTHY GRENON,**

did knowingly and willfully, and in disobedience and resistance to a lawful order and command of the United States District Court for the Southern District of Florida, that is, a Preliminary Injunction issued in Miami, Florida, on or about May 1, 2020, in the case of *United States v. Genesis II Church of Health and Healing, et al.*, Case No. 20-21601-CV-WILLIAMS, violate that Preliminary Injunction, in that the defendants did directly and indirectly label, hold, and distribute an unapproved and misbranded drug, namely, MMS.

In violation of Title 18, United States Code, Sections 401(3) and 2.

A TRUE BILL

_____
FOREPERSON

_____
JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

_____
MICHAEL B. HOMER
ASSISTANT UNITED STATES ATTORNEY

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

MARK SCOTT GRENON, et al.,

_____ Defendants. _____/

CASE NO._____

**CERTIFICATE OF TRIAL ATTORNEY\***

Superseding Case Information:

Court Division: (Select One)
✓ Miami    __ Key West
__ FTL     __ WPB    __ FTP

New defendant(s)            Yes ___ No ___
Number of new defendants    ___
Total number of counts      ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    No
   List language and/or dialect   _____

4. This case will take __10__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                      (Check only one)
   I     0 to 5 days         ___         Petty      ___
   II    6 to 10 days         ✓          Minor      ___
   III   11 to 20 days       ___         Misdem.    ___
   IV    21 to 60 days       ___         Felony      ✓
   V     61 days and over    ___

6. Has this case previously been filed in this District Court?    (Yes or No)    No
   If yes: Judge _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)    Yes
   If yes: Magistrate Case No.    20-03050-MJ-OTAZO-REYES
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of    July 8, 2020
   Defendant(s) in state custody as of   _____
   Rule 20 from the District of        _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes ___  No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes ___  No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?    Yes ___  No ✓

10. Does this case originate from a matter pending in the Southern Region of the U.S. Attorney's Office prior to November 23, 2020 (Judge Aileen M. Cannon)?    Yes ✓  No ___

*[signature: Michael B. Homer]*
Michael B. Homer
Assistant United States Attorney
Court ID A5502497

\*Penalty Sheet(s) attached

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** MARK SCOTT GRENON

**Case No:** _____

Count #: 1

Conspiracy

Title 18, United States Code, Section 371

***Max. Penalty:** Five (5) Years' Imprisonment

Counts #: 2-3

Criminal Contempt

Title 18, United States Code, Section 401(3)

***Max. Penalty:** Life Imprisonment

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** JONATHAN DAVID GRENON

**Case No:** _____

Count #: 1

Conspiracy

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) Years' Imprisonment

Counts #: 2-3

Criminal Contempt

Title 18, United States Code, Section 401(3)

**\*Max. Penalty:** Life Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**PENALTY SHEET**

**Defendant's Name:** JORDAN PAUL GRENON

**Case No:** _____

Count #: 1

Conspiracy

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) Years' Imprisonment

Counts #: 2-3

Criminal Contempt

Title 18, United States Code, Section 401(3)

**\*Max. Penalty:** Life Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**PENALTY SHEET**

**Defendant's Name:** JOSEPH TIMOTHY GRENON

**Case No:** _____

Count #: 1

Conspiracy

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) Years' Imprisonment

Counts #: 2-3

Criminal Contempt

Title 18, United States Code, Section 401(3)

**\*Max. Penalty:** Life Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**